(Reap. Dec. 9124)

R. H. VASQUEZ & Co. *v.* UNITED STATES

Entry No. 3287.

(Decided April 9, 1958)

*Lawrence & Tuttle* (*George R. Tuttle, Sr.*, of counsel) for the plaintiff.
*George Cochran Doub*, Assistant Attorney General (*Joseph E. Weil* and *Daniel I. Auster*, trial attorneys), for the defendant.

DONLON, Judge: The merchandise in this appeal to reappraisement consists of rifles with bayonets, imported by truck from Mexico and entered at the port of Los Angeles. It appears that the conditions

appropriate to a finding of foreign value for these rifles do not obtain. The rifles were appraised at export value, and plaintiff concurs in the facts basic to application of export value to appraisement of this merchandise. Plaintiff's claim is that the export value, as found by the appraiser, is too high.

The value for which plaintiff contends is the entered or invoice value, which is $8.05 per rifle, plus packing. The amount of packing cost does not appear. Invoice price was 69.20 Mexican pesos. It is not in dispute that $8.05 is the proper United States dollar equivalent of such pesos for purposes of this appeal.

Defendant's claim is that export value is the appraised value. This is $20 per rifle, plus packing, presumably (since it is not in controversy) the same cost of packing which is included in plaintiff's claim. The value of $20 appears to be based on an offering of rifles by the same Mexican seller, Mexicana de Aceros, by letter of April 29, 1952, to another American importer, Pasadena Firearms Co.

The official papers were not put in evidence. The record developed by plaintiff comprises, first, a stipulation as to certain statements which were read into the record from a *pro forma* invoice (not in evidence), said to be on file with the entry and, second, the affidavit of Hugo Franck Olvera, who described himself as manager of Mexicana de Aceros, S. de R. L., Mexico, seller of these rifles. While the affidavit is properly before us as part of the record in this case, it is stating the obvious to say that there was no opportunity for cross-examination of affiant Olvera or for the court to observe him. This does not affect admissibility of the affidavit, but the court takes this into consideration in weighing evidence adduced only by affidavit.

Defendant produced two witnesses who testified and who were cross-examined by plaintiff's counsel. Both were customs employees. Louis H. Gwinn was the customs agent who investigated the value of the rifles. Louis Munch was the customs examiner at Los Angeles who personally examined the merchandise. Defendant also introduced a photostatic copy of a letter from the seller in Mexico, addressed to Alvin D. Gettler of Pasadena Firearms Co., to whom the offering was made on which appraised value seems to be based. This letter is in the Spanish language, and there is an English translation. Witness Gwinn testified that he received the original letter from the addressee and that he (Gwinn) had the photostatic copy made. Plaintiff did not object that a photostatic copy, rather than the original, was introduced, and conceded that the translation into English was correct.

On this record, the court is to decide whether plaintiff has, by its proofs, not only overcome the presumption of correctness that attaches

to the appraisement, but also shown the value which it claims to be the correct value of the merchandise.

The affidavit of Mr. Olvera relates that these were obsolescent Mexican army rifles, of Mauser type, which were acquired by Mexicana de Aceros from the Mexican Government; that the terms on which the Government sold these surplus rifles precluded their offer for Mexican domestic sale; that Mexicana de Aceros sorted the rifles bought from the Government into job lots, according to the degree of "wear and tear," and offered the rifles in such lots, the "good with the bad" at a price per rifle; that no price list for the rifles was made or published, and that price for each lot was open to "bargaining"; that the rifles were displayed in Mexico City and were freely offered for sale by Mexicana de Aceros "to all prospective purchasers it could reach in the ordinary course of its business" for export; that the 1,000 rifles sold to plaintiff at 69.20 pesos (of which 800 rifles are the merchandise here in issue) were not offered "to any other potential purchasers"; that two American firms, plaintiff and Pasadena Firearms Co., purchased the entire stock of rifles; that 600 rifles sold to Pasadena Firearms Co. were of approximately the same "quality" as the 1,000 rifles sold to plaintiff; and that the price charged plaintiff was lower, because of the larger quantity of rifles it purchased. The affidavit lists what are said to be the aggregate of all sales of such Mauser rifles by Mexicana de Aceros during 1952, as follows:

| Date | Purchaser | Quantity | Price, each |
|------|-----------|----------|-------------|
| May 25, 1952 | R. H. Vasquez & Co_____ | 993 | U. S. $2.00 |
| | | 127 | U. S. $3.00 |
| July 24, 1952 | " | 295 | U. S. $2.00 |
| July 10, 1952 | " | 1,000 | Mexican pesos 69.20 |
| July 10, 1952 | Pasadena Firearms Co_____ | 600 | Mexican pesos 85.02 |

There is testimony adduced by defendant that representative rifles, from the importation here in issue, were examined and found to be new, without marks showing previous use. Plaintiff's evidence is that the rifles were obsolescent, and this might be so whether they were new or used rifles. Hence, this line of evidence is not of great significance.

The evidence is far from clear as to the dates of exportation and entry, but the weight of evidence appears to be that these rifles were exported from Mexico on or about July 10, 1952.

There is no evidence with respect to any rifles, either such or similar, save only the 3,015 *such* rifles sold by Mexicana de Aceros

in the four sales shown by Mr. Olvera's affidavit. On the record as to these 3,015 rifles, the case is to be decided.

It would be difficult to conclude from the evidence before me that there was any usual wholesale quantity for such or similar rifles, or what that quantity was. Mr. Olvera concedes that there was no uniform price, either for a fixed quantity or for any quantity, offered to all comers. He stated that each price was bargained and that the price plaintiff paid was lower, because of the large quantity of rifles which plaintiff bought. Here, there is no such free offering to all comers, at a price for the usual wholesale quantity, as section 402 (d) of the Tariff Act of 1930 contemplates.

Plaintiff argues that one sale may establish export value. If so, it must be, as plaintiff concedes, a sale in the ordinary course of trade, in conformity with the statutory requirements of section 402 (d). Plaintiff has not shown that the sale of rifles by Mexicana de Aceros to plaintiff, which is the sale on which it relies as establishing export value, was a sale which met the conditions that are laid down in section 402 (d). Plaintiff has not met its burden of proof.

It may be said that neither plaintiff nor defendant has proved either that there was export value, or that the particular export value which it claims is correct. The issue here is not whether export value or United States value is the proper basis for appraisement. Plaintiff concurs with defendant in supporting export value as the basis of appraisement and has the double burden of proving both that the appraised value is wrong and that another basis of value, if it claims such, is right. Plaintiff cannot prevail merely by proofs that impair the correctness of the appraised value. It must also prove that another value, which it claims, is correct. This plaintiff has not done.

This burden of proof was pointed out recently in *Nicholas Gal (Globe Shipping Co., Inc.)* v. *United States,* 38 Cust. Ct. 728, A. R. D. 72;

* * * Whether or not the appraised value is erroneous, it stands, unless appellant proves the right to another value. It is the presumptively correct value until proven otherwise.

Plaintiff has not overcome the presumption of correctness which attaches to the appraisement.

I find as facts:

1. That the merchandise consists of 800 7-millimeter Mauser type military rifles with bayonets, exported from Mexico in July 1952, and entered at the port of Los Angeles.

2. That, at the time of exportation, such or similar merchandise was not freely offered in Mexico for sale to all purchasers for home consumption.

3. That the merchandise was entered at $8.05 (69.20 pesos) each, net, plus packing, and was appraised at export value $20 each, net, plus packing.

4. That the record does not establish a value or price at which such or similar merchandise was freely offered for sale to all purchasers for export to the United States in the usual wholesale quantities and in the ordinary course of trade, different from the appraised value.

I conclude as a matter of law:

1. That, at the time of exportation, there was no foreign value for the merchandise, subject of this appeal, as value is defined in section 402 (c) of the Tariff Act of 1930, as amended.

2. That plaintiff has failed to overcome the presumptively correct appraised value of the rifles with bayonets, subject of this appeal, and that the value thereof is the value returned by the appraiser.

Judgment will be entered accordingly.